**ALABAMA CIVIL LIBERTIES UNION and Dess Sangster, Plaintiffs,**

v.

**George C. WALLACE, Governor of Alabama and ex-officio member of the State Board of Education, et al., Defendants.**

Civ. A. No. 3327-N.

United States District Court, M. D. Alabama, N. D.

Sept. 30, 1971.

Joseph J. Levin, Jr., Levin & Dees, Montgomery, Ala., for plaintiffs.

Charles M. Crook, Smith, Bowman, Thagard, Crook & Culpepper, Montgomery, Ala., for defendants.

## OPINION

VARNER, District Judge.

By Plaintiffs' motion for summary judgment this Court is again called upon to reaffirm the principle set out in the First Amendment of the Constitution by which our forefathers prohibited political interference in affairs of the church and reiterated the admonition of Jesus Christ that we should "Render therefore unto Caesar the things that are Caesar's; and unto God the things that are God's." Matthew 22:21. The matter of good faith of the Defendants is not here in question.

A long series of opinions of the United States Supreme Court and other courts of this nation clearly and without deviation establish that this is a God-fearing nation devoted to principles of religion and obligated from its inception to the principle of freedom of religious thought. This case must not be construed as an adversary proceeding between church and state, between Christians and non-Christians, or between Bible readers and non-Bible readers. The moral and legal question presented by this cause is whether, within the framework of the Constitution of the United States, a political body may require periodic public readings of religious literature of any faith to the exclusion of other faiths.

The Code of Alabama, Title 52, §§ 542, 543 and 544, requires that each public school in the State of Alabama provide readings from the Holy Bible on each day of school.[1] The First Amend-ment of the Constitution, in pertinent part, is a prohibition against the enactment by Congress of any law "respecting an establishment of religion".[2] The "establishment" clause of the First Amendment was made applicable to laws and regulations of state agencies by the Fourteenth Amendment.[3] School District of Abington v. Schempp, 374 U.S. 203, 215, 83 S.Ct. 1560, 10 L.Ed.2d 844; Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213.

The contemporary Supreme Court has often written to the effect that the very basis of our government is religion and that we are basically a religious nation. In Engel v. Vitale, 370 U.S. 421, 434, 82 S.Ct. 1261, 1268, 8 L.Ed.2d 601, the Court said: "The history of man is inseparable from the history of religion. And * * * since the beginning of that history many people have devoutly believed that 'More things are wrought by prayer than this world dreams of'." In Zorach v. Clauson, 343 U.S. 306, 313, 72 S.Ct. 679, 684, 96 L.Ed. 954, the Court said, "we are a religious people whose institutions presuppose a Supreme Being." In School District of Abington v. Schempp, supra, the Court states, "the fact that the Founding Fathers believed devotedly that there was a God and that the unalienable rights of man were rooted in Him is clearly evidenced in their writings, from the Mayflower Compact to the Constitution itself." In 1870, Judge Taft, father of the late Chief Justice Taft, in an unpublished opinion appearing in "The Bible In the Common Schools" (Robert Clarke

---

1. § 542. All schools in this state that are supported in whole or in part by public funds shall have once every school day readings from the Holy Bible. (1927 School Code, § 594.) § 543. Teachers in making monthly reports shall show on the same that they have complied with the preceding section, and superintendents of city schools in drawing public funds shall certify that each teacher under his supervision has complied with this and the preceding section. (1927 School Code, § 695.) § 544. Schools in the state subject to the provisions of this and the two preceding sections, shall not be allowed to draw public funds unless the provisions of this and the two preceding sections are complied with, and the state superintendent of education is charged with the enforcement of the provisions hereof. (1927 School Code, § 596.)

2. Amendment I. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; * * *."

3. Amendment XIV. "* * * No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; * *."

and Co., 1870), spoke of the "absolute equality before the law of all religious opinions and sects * * *" and "the government is neutral, and, while protecting all, it prefers none, and it disparages none." These views, while expressed in a dissenting opinion were to prevail on appeal. Board of Education of Cincinnati v. Minor, 23 Ohio State 211, 253 (1872). The Ohio Supreme Court, in that opinion stated:

"The great bulk of human affairs and human interests is left by any free government to individual enterprise and individual action. Religion is eminently one of these interests, lying outside the true and legitimate province of government."

The long line of decisions of the higher federal courts concerning infringement of religion never ignores the exalted position of religion in the United States or its effect on our Founding Fathers. While there was a reluctance in many early courts, 45 A.L.R.2d 744, et seq., to hold Bible reading invalid under any circumstances, most courts now readily articulate the recognition by our Fathers of the necessity that such a subject as religion must be relieved of the ever-potent pressures of politics and, therefore, must be placed beyond the reach of majorities and officials. See 47 Am.Jur. 446, et seq., Schools, § 208, et seq. The Supreme Court in School District of Abington v. Schempp, supra, when considering the rights guaranteed by the Constitution of a free exercise of religion with the prohibition that "Congress shall make no law respecting an establishment of religion," stated the following:

"While the Free Exercise Clause clearly prohibits the use of state action to deny the rights of free exercise to anyone, it has never meant that a majority could use the machinery of the State to practice its beliefs."

The Court then pointed out the opinion in West Virginia Board of Education v. Barnett, 319 U.S. 624, 638, 63 S.Ct. 1178, 87 L.Ed. 1628, in which the Court stated the following:

"The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to freedom of worship and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections."

The Court then recognized that the:

" * * * place of religion in our society is an exalted one, achieved through a long tradition of reliance on the home, the church and the inviolable citadel of the individual heart and mind. We have come to recognize through bitter experience that it is not within the power of the government to invade that citadel, whether its purpose or effect be to aid or oppose, to advance or retard. In the relationship between man and religion, the State is firmly committed to a position of neutrality. Though the application of that rule requires interpretation of a delicate sort, the rule itself is clearly and concisely stated in the words of the First Amendment." 374 U.S. at 226, 83 S.Ct. at 1574.

The *Abington* Court held a statutory requirement of daily Bible readings unconstitutional though the statute exempted those whose parents requested such exemption.

The evil faced by our forefathers and prohibited by the Constitution is that "whenever government * * * allied itself with one particular form of religion, the inevitable result had been that it had incurred the hatred, disrespect and even contempt of those who held contrary beliefs." Engel v. Vitale, supra, 370 U.S. at 431, 82 S.Ct. at 1267. The Supreme Court has again and again condemned exactly the practice which the named officials of Alabama now seek to effect. School District of Abington v. Schempp, supra; Everson v.

Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711; Engel v. Vitale, supra; Cantwell v. Connecticut, supra; Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292; People of State of Ill. ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649; McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393; Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982; West Virginia Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628. In People of State of Ill. ex rel. McCollum v. Board of Education, 333 U.S. at 227, 68 S.Ct. at 473, the Court stated, "the Constitution * * * prohibited the Government common to all from becoming embroiled, however innocently, in the destructive religious conflicts of which the history of even this country records some dark pages." Then in Zorach v. Clauson, supra, 343 U.S. at 312, 72 S.Ct. at 683, the Court stated, "There cannot be the slightest doubt that the First Amendment reflects the philosophy that Church and State should be separated."

On the other hand, the Supreme Court has made it very plain that neither Congress nor any state legislature may establish a "religion of secularism" in the sense of affirmatively opposing or showing hostility to religion, thus preferring those who believe in no religion over those who do believe in a religion. Zorach v. Clauson, supra, at 314, 72 S.Ct. 679; School District of Abington v. Schempp, supra, 374 U.S. at 225, 83 S. Ct. at 1573. The Supreme Court has never been hostile to religions and has made clear its position that certain religious matters may be considered in school and that:

> " * * * one's education is not complete without a study of comparative religion or the history of religion and its relationship to the advancement of civilization. It certainly may be said that the Bible is worthy of study for its literary and historic qualities. Nothing we have said here indicates that such study of the Bible or of religion, when presented objectively as part of a secular program of education, may not be effected consistently with the First Amendment." School District of Abington v. Schempp, 374 U.S. at 225, 83 S.Ct. at 1573.

The Supreme Court has clearly, regularly, and often pronounced its prohibition of laws such as these now before this Court based upon bitter lessons learned in England and in the early history of this nation. Religion must be relieved of the possibility of political pressure and, to that end, the decisions of the Supreme Court are both illuminating and binding. It is, therefore, the *opinion of this Court that Code of Alabama, Title 52, Sections 542, 543 and 544 are repugnant to the First Amendment of the Constitution and are void and that enforcement of said statutes and of the challenged order of the State of Alabama Board of Education should be permanently enjoined.*

### FINDINGS OF FACT

1. Plaintiff, Alabama Civil Liberties Union, is a nonprofit organization incorporated under the laws of the State of Alabama with members residing throughout the state who have children attending public systems subject to the provisions of Title 52, Sections 542–544, Code of Alabama (Recomp.1958). Plaintiff, Dess Sangster, is the parent and natural guardian of minor children currently enrolled in school in Montgomery County, Alabama, subject to the provisions of Title 52, Sections 542–544, Code of Alabama (Recomp.1958).

2. All of the Defendants reside or are located within the jurisdiction of the United States District Court for the Middle District of Alabama.

3. The minor children of Plaintiff, Dess Sangster, are presently enrolled in school in Montgomery County, Alabama. At schools attended by these minor children daily devotionals are observed by the reading of verses of the Bible.

4. The practice of daily Bible reading in the public schools of Alabama

constitutes religious instruction and the promotion of religion and is a religious ceremony.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter of this litigation under Section 1343, Title 28, and Section 1983, Title 42, United States Code.

2. The practice of reading verses of the Bible each day in public schools of Alabama is conducted pursuant to the mandatory provisions of Code of Alabama (Recomp.1958), Title 52, Sections 542, 543 and 544.

3. Code of Alabama (Recomp.1958), Title 52, Sections 542–544, violate the First Amendment to the United States Constitution as applied to the state by the Fourteenth Amendment in that they are laws respecting an establishment of religion.

4. The practice of conducting Bible reading in the public schools of Alabama violates the First Amendment to the United States Constitution as applied to the states by the Fourteenth Amendment in that it relates to an establishment of religion.

5. From the pleadings, interrogatories, answers to interrogatories and other factual matter before the Court, no material fact is in controversy.

It is, therefore, the ORDER, JUDGMENT and DECREE· of this Court that the Defendants, members of the Alabama State Board of Education and their successors, as such, are perpetually enjoined and restrained from reading and causing to be read, or permitting anyone subject to their control and direction to read, to students in the public schools of the State of Alabama, readings from the Holy Bible as required by § 542, Title 52, Code of Alabama (Recomp.1958); provided, that nothing herein shall be construed as interfering with the use of the Holy Bible as an educational source or reference material. It is the further

ORDER, JUDGMENT and DECREE of this Court that Defendant, Alabama State Board of Education, within a reasonable time notify all local Superintendents of Education, who will in turn notify all public school principals and teachers, that Code of Alabama (Recomp.1958), Title 52, Sections 542–544, requiring daily Bible reading in public schools has been declared unconstitutional and void, and that an injunction has issued enjoining the daily reading of Bible verses for religious purposes in the public schools of Alabama.